UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL D. LUSK,

        Plaintiff,

v.                        Case No. 19-CV-616

MILES S. ARNE, MARY ALSTEEN,
JOHN KIND, ZAKARY KORPITA,
JEAN LUTSEY, CAITLIN SEEKINS,
and JAY VAN LANEN,

        Defendants.

## DECISION AND ORDER

        Plaintiff Carl D. Lusk, who is representing himself and confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Lusk was allowed to proceed on claims under the Eighth Amendment for deliberate indifference to his medical needs for limiting access to his inhaler and not treating his asthma.

        The defendants filed a motion for summary judgment on the merits. (ECF No. 105.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 18.)

### PRELIMINARY MATTERS

        Lusk filed a motion to mediate the case, but the print was so faint the court could not read it. (ECF No. 103.) On November 8, 2021, the court's deputy clerk sent a letter to Lusk telling him that he needed to resubmit the motion by November 22, 2021. (ECF No. 104.) Lusk never refiled the motion, so it is denied.

Additionally, the defendants in their reply brief argue that the court should dismiss the case because Lusk failed to argue that qualified immunity does not apply to the defendants. (ECF No. 118 at 1.) The defendants also noted that, because Lusk did not respond to their proposed findings of fact, the court should deem them undisputed. (*Id.* at 2.)

In response to the defendants' reply Lusk filed a motion to amend his summary judgment response. (ECF No. 120.) Attached to his motion was a revised brief that addressed qualified immunity (ECF No. 121), a new set of proposed findings of fact, (ECF No. 122), and responses to the defendants' proposed findings of fact (ECF No. 123). The defendants did not respond to Lusk's motion to amend his summary judgment response. Nor did they file an amended reply brief or respond to Lusk's amended proposed findings of fact.

Lusk is proceeding *pro se* and explains that he was confused with what was required of him. Because the defendants did not object to Lusk's motion to amend, the court will grant the motion as unopposed. Doing so does not unfairly prejudice the defendants. Lusk's original proposed findings of fact (ECF No. 116), to which the defendants responded (ECF No. 119), are substantively identical to Lusk's new proposed findings of fact (ECF No. 122). The court will consider Lusk's original proposed findings of fact and the defendants' response when analyzing the defendants' motion for summary judgment.

The other amended materials Lusk filed—his brief in opposition that addresses qualified immunity and a response to the defendants' proposed findings of fact—are

2

materials that Lusk should have filed with his original response to the defendants' summary judgment motion. But district courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's faulty filings by construing evidence in the light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Thus, the court will allow Lusk to cure the defects in his response and will consider his amended brief and his response to the defendants' proposed findings of fact.

### FACTS

*Parties*

At all times relevant Lusk was incarcerated at Green Bay Correctional Institution (GBCI). (ECF No. 107, ¶ 1.) Defendants Miles Arne, Zakary Korpita, and Caitlin Seekins were correctional officers at GBCI. (*Id.*) Defendant Mary Alsteen was a registered nurse at GBCI, and defendant Jean Lutsey was the Health Services Manager at GBCI. (*Id.*) John Kind was GBCI's security director, and Jay Van Lanen was a Captain at GBCI. (ECF No. 106 at 7.)

*Lusk's Requests for his Inhaler*

On July 10, 2018, at approximately 6:30 p.m., Lusk was transferred from temporary lock up (TLU) to a cell in the restrictive housing unit (RHU). (ECF No. 107, ¶ 2.) Lusk, who is asthmatic, generally had his inhaler on him at all times; however, when he transferred to RHU he was required to keep his inhaler on a medical cart. (ECF No. 116, ¶ 3.) Arne and Korpita were working in the RHU, and Lusk asked them for his inhaler several times that evening and through the next day. (*Id.*, ¶¶ 4-5.) Lusk

3

states that Arne and Korpita repeatedly ignored his requests. (*Id.*) Arne and Korpita state that Lusk never asked them for his inhaler. (ECF No. 107, ¶ 19.)

At 10:34 p.m. on July 11, 2018, Lusk used the emergency call button to request his inhaler. (ECF No. 116, ¶ 7.) Seekins answered the call. (*Id.*, ¶ 9; ECF No. 107, ¶ 11.) It is undisputed that Seekins informed the acting sergeant and the wing officer that Lusk had requested his inhaler. (ECF No. 107, ¶ 14; ECF No. 116, ¶ 9.) Seekins was following policy by informing the acting sergeant and the wing officer of Lusk's request because she was staffed as the control officer that night and could not leave the control room. (ECF No. 107, ¶ 12-14.)

Lusk states that Arne was the acting sergeant at that time, and Seekins states that she cannot recall who was acting sergeant but admits that "it may have been Officer Arne." (ECF No. 107, ¶ 16; ECF No. 116, ¶ 9.) Lusk also contends that Seekins informed Officer Korpita, the wing officer, that Lusk had requested his inhaler. (ECF No. 116, ¶ 9.) But Lusk did not receive his inhaler, and at some point shortly thereafter (it is unclear from the record exactly when) he passed out due to trouble breathing and hit his head. (ECF No. 116, ¶ 1.)

Once Lusk recovered, he wrote three Health Services Requests (HSR) requesting to be seen for his head injury and his asthma attack, which Nurse Alsteen received on July 12, 2018. (ECF No. 107, ¶ 25.) On July 12, in response to the HSRs, Alsteen called the RHU sergeant on duty (non-defendant Sergeant Friedel) to assess the situation. (*Id*, ¶ 26.) Friedel informed her that he had since given Lusk his inhaler and that Lusk "was in no acute distress and had no further medical complaints." (*Id.*)

4

As a result of that conversation, Alsteen decided to consider Lusk's request to be seen for his head injury and his asthma "a regular, non-emergency priority" because, in her professional judgment, Lusk's medical issues were not urgent. (*Id.*, ¶ 27.)

Lusk alleges that his medical issue *was* an emergency, and Alsteen should have seen him sooner, but he offers no evidence as to why his medical issue was emergent. (ECF No. 123, ¶ 26.) Alsteen examined Lusk in the Health Services Unit (HSU) on July 16, and Lusk did not mention headaches or any lingering symptoms from having hit his head. (ECF No. 107, ¶ 29.) Lusk admits that he may have forgotten to address his head injury at the July 16 appointment but contends Alsteen should have known to address it based on the HSR he submitted. (ECF No. 123, ¶ 31.)

On July 18, 2018, Lusk submitted another HSR regarding his headaches. (ECF No. 107, ¶ 30). Alsteen examined Lusk two days later, at which point Lusk complained of two to three headaches per day that would go away with a nap. (*Id.*, ¶ 31.) He also stated he would get headaches after fast position changes. (*Id.*) Alsteen examined him for signs of a concussion and did not detect any. (*Id.*) She determined that his headaches were likely due to dehydration and recommended he drink more water. (*Id.*) There is no evidence that Lusk had any more visits to the HSU regarding his headaches.

As to Lutsey, Van Lanen, and Kind, the defendants claim that they were not involved in the incident with Lusk's inhaler on July 11 or the resulting medical care. (ECF No. 107, ¶ 33, 34; ECF No. 106 at 7.) Lusk states that they knew or should have

5

known about his issues through inmate complaints and did nothing to intervene. (ECF No. 123, ¶ 33.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

6

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Eighth Amendment Deliberate Indifference to Medical Needs*

Lusk claims defendants Arne, Korpita, and Seekins violated his Eighth Amendment rights when they failed to provide him with his inhaler when he was having trouble breathing. He claims Alsteen violated his Eighth Amendment rights when she failed to timely provide medical care for his asthma attack and head injury. And he claims Kind, Lutsey, and VanLanen violated his Eighth Amendment rights when they failed to ensure the other defendants were properly addressing his medical needs.

"[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1994)). A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle,* 429 U.S. at 104. "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea,* 631 F.3d 843 857 (7th

7

Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The parties do not address the question of whether Lusk's asthma attack on July 11, 2018, was an objectively serious medical need. For purposes of summary judgment, the court finds that Lusk's asthma attack was objectively serious.

Turning to whether the defendants were deliberately indifferent, a plaintiff must demonstrate "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties* 836 F.3d at 728 (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id.* The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). This includes situations where a prison official fails to act or do anything to address the serious medical need. *See Gayton*, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). It also includes situations where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

A genuine question of material fact exists as to whether Arne and Korpita knew that Lusk was having trouble breathing, knew that he needed his inhaler, and failed

8

to provide it to him. Arne and Korpita state that Lusk never asked them for his inhaler. Lusk asserts that he notified Seekins using the emergency call button that he was having a hard time breathing and needed his inhaler. Seekins states that, pursuant to the applicable policy, she told the acting sergeant on duty, and that acting sergeant "may have been Officer Arne," but she could not remember. (ECF No. 107, ¶ 16.) Lusk contends it was Arne. (ECF No. 116, ¶ 9.) Seekins also states that, pursuant to policy, she notified the wing officer, which Lusk asserts was Korpita that night.

Taking the facts in a light most favorable to Lusk, a reasonable fact finder could conclude that Seekins notified Arne and Korpita that Lusk was experiencing trouble breathing and needed his inhaler. Despite this, Arne and Korpita failed to provide it, resulting in Lusk passing out and hitting his head. If true, this would amount to deliberate indifference. *See Williams v. Wissing*, Case No. 8-C-1017, 2011 WL 854346 at * 4 (E.D. Wis. Mar. 8, 2011) (allowing claim to survive summary judgment because a reasonable factfinder could conclude that a prison official's failure to provide an inmate with his inhaler to prevent an asthma attack amounted to deliberate indifference).

However, no reasonable factfinder could conclude that Seekins was deliberately indifferent to Lusk's medical needs. It is undisputed that Seekins was staffing the control room that night, and, according to protocol, instead of leaving the control room to address the situation she was required to inform the acting sergeant and wing officer of Lusk's condition. It is undisputed that Seekins did just that. It is irrelevant that Seekins cannot remember the identity of the acting sergeant or wing officer that

9

night; what matters is that she alerted the appropriate officers. Lusk argues that Seekins should have ensured the acting sergeant and wing officer appropriately followed up with his request, but "no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, summary judgment is granted in favor of Seekins, and she is dismissed.

Regarding Alsteen, she called the sergeant on duty, Friedel, to assess the situation as soon as she received Lusk's HSRs on July 12. When Friedel told her that Lusk was not experiencing any medical issues at that time, Alsteen, exercising her professional judgment, booked Lusk for the next available HSU appointment, which was July 16, five days later. Lusk claims that this delay violated his rights.

However, "[t]o show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged the pain." *Petties*, 836 F.3d at 730-31. Lusk has not presented any evidence demonstrating that the delay between his fall and his HSU appointment made his condition worse. Lusk also presented no evidence that the treatment Alsteen prescribed on July 20 failed to address his headaches or that he suffered from the effects of a head injury after that appointment. Summary judgment is granted in Alsteen's favor, and she is also dismissed from the case.

Lusk claims that Lutsey (the HSU Manager), Kind (the security director), and VanLanen (GBCI's Captain) violated his rights by failing to properly supervise those correctional officers under their supervision. For supervisors to be held liable for constitutional violations caused by their employees, the violation must happen at the

10

supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Lusk has not demonstrated that any of these three defendants knew that Lusk had asked for his inhaler. At most he shows that they knew through inmate grievances that he had fallen and hit his head, but that is an insufficient basis upon which to hold them liable. Prison officials operating supervisors, or as inmate complaint examiners, cannot be held liable for conduct that they did not personally participate in. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). Summary judgment is granted in Lutsey's, VanLanen's, and Kind's[1] favor, and they, too, are dismissed.

*Qualified Immunity*

The defendants state that, even if the court concludes that a genuine dispute of material fact exists as to one or more of the defendants, the court should nevertheless grant summary judgment in their favor because they are entitled to qualified immunity. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the

---

[1] The court notes that the defendants' response materials barely mention VanLanen and Kind. There is no proposed finding of fact addressing what they did or did not do or know. The most substantive mention is a parenthetical in their brief in support— "HSM Lutsey (much less Captain Jay VanLanen or Security Director John Kind) cannot be held liable for what another person did or did not do." While ultimately the court agrees with this conclusion because in this instance Lusk clearly failed to present evidence demonstrating they should be liable, the court advises against simply declining to present a meaningful defense on behalf of a named defendant.

11

constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018).

As discussed above, it has already been determined that a reasonable factfinder could conclude that Arne and Korpita were deliberately indifferent to Lusk's objectively serious medical needs. The only question remaining is whether, operating under the law as it existed in July 2018, a reasonable prison official would have known that failing to give an inmate his inhaler when he was experiencing breathing troubles constituted deliberate indifference.

The defendants present no argument as to why they are entitled to qualified immunity. Instead, they state that "[i]t is the plaintiff's burden to show the clarity in the law, not the defendant's burden to show lack of clarity. The defendant need only raise the issue; it is the plaintiff's burden to identify controlling precedent putting it beyond debate that the defendant was violating a reasonably specific right." (ECF No. 106 at 9.) However, it was well established in 2018 that it is deliberate indifference for a prison official to fail to give an inmate his inhaler, resulting in an asthma attack,. *See Board v. Farnham*, 394 F.3d 496, 485 (7th Cir. 2005) (rejecting qualified immunity defense because it is clearly established that refusing to provide an inmate with his inhaler while he was experiencing breathing problems was a constitutional violation); *Williams v. Wissing*, Case No. 8-C-1017, 2011 WL 854346 at * 4 (E.D. Wis. Mar. 8, 2011).

Because it is clear that denying an inmate who was experiencing breathing problems an inhaler constitutes deliberate indifference to an objectively serious

12

medical need, Arne and Korpita are not entitled to qualified immunity. The claims against them survive summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of Seekins, Alsteen, Lutsey, Kind, and VanLanen. Summary judgment is denied as to the claims against Arne and Korpita. Because some of Lusk's claims survived summary judgment, the court will recruit counsel to represent him. Once the court has found an attorney willing to represent Lusk, the court will provide him with an agreement, which he may sign if he agrees to accept representation under the conditions the court provides. Once counsel is on board, the court will set up a scheduling conference with the lawyers to discuss next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Lusk's motion to mediate the case (ECF No. 103) is **DENIED**.

**IT IS FURTHER ORDERED** that Lusk's motion to amend his summary judgment response (ECF No. 120) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 105) is **GRANTED in part and DENIED in part**. Mary Alsteen, John Kind, Jean Lutsey, Caitlin Seekins, and Jay VanLanen are **DISMISSED**.

**IT IS FURTHER ORDERED** that counsel will be recruited to represent Lusk.

13

Dated at Milwaukee, Wisconsin this 2nd day of May, 2022.

BY THE COURT

*William E. Duffin*
WILLIAM E. DUFFIN
United States Magistrate Judge